# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>3 Laptop Computers | )<br>)<br>) Case No.   24-mj-08749 -LR<br>)<br>)<br>) |

**FILED**
Aug 30 2024
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY    s/ carolinalopez    DEPUTY

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the    Southern    District of    California   , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC sec. 875 | Interstate Communication - Threats to Injure |

The application is based on these facts:
See Attached Affidavit of Federal Bureau of Investigation Special Agent Mitchel Burkholder incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Mitchel Burkholder, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
   telephone    *(specify reliable electronic means)*.

Date:    8/30/24   

*Judge's signature*

City and state:   San Diego, California           Honorable Lupe Rodriguez, Jr., U.S. Magistrate Judge
*Printed name and title*

# Attachment A
# Property to be Searched

The property to be searched is as follows:

Laptop Computers belonging to Jacob Enriquez currently in the custody of the SD RCFL and FBI with FBI Evidence Numbers:

a. 1B1 (Black Fusion 5 Laptop – Serial Number 202101347),
b. 1B3 (Silver Macbook – Serial Number C1MPR9LVG940), and
c. 1B4 (Silver Macbook – Serial Number C02SC278GTHX).

## Attachment B
## Items to be Seized

The evidence to be seized from the search of property identified in A is as follows:

a. Laptop Computers;

The seizure and search of computers and computer media will be conducted in accordance with the "Procedures For Electronically Stored Information as to Computers and Other Electronic Storage Devices," provided in the affidavit submitted in support of this warrant.

The following data will be seized only to the extent that it contains evidence of violations of 18 U.S.C. § 875, including evidence reflecting use, dominion and control of the device such as communications, records, or data including but not limited to emails, photographs, audio files, videos, or location data:

1) Tending to indicate efforts to send threatening emails;

2) Tending to identify other facilities, storage devices, or services-such as email addresses, IP addresses, phone numbers- that may contain evidence of efforts to send threatening emails;

3) Tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data described above;

4) Tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above;

which are evidence, fruits or instrumentalities of violations of 18 U.S.C. § 875 (c) - Interstate Communication - Threats to Injure.

**AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR SEARCH WARRANTS**

I, Mitchel Jaye Burkholder, being duly sworn, declare and state:

INTRODUCTION

1. I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States, who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2. I am a Special Agent with the Federal Bureau of Investigation and have been so employed for approximately 2 years. My current assignment is the Imperial County Resident Agency through the San Diego Field Office. I investigate federal crimes that include fraud, public corruption, kidnappings, bank robberies, extortions, assaults on federal officers, organized crime, drug offenses, violent crime, and crimes against children.

3. My relevant training and experience include completing approximately 19 weeks of training at the FBI Academy in Quantico, Virginia. During the training, I received instruction in a variety of investigative techniques commonly used in support of a wide range of the FBI's investigative priorities. The training included instruction regarding the use of confidential human sources, electronic and physical surveillance techniques, law enforcement tactics, search and seizure laws and techniques, federal laws and violations, interviewing strategies and skills, evidence collection, and a variety of other subjects.

4. Prior to my appointment to the FBI, I was employed as a City of Madison Police Officer in Madison, Wisconsin. I was employed with them from September 2017 to September 2022. During this time, I attended the City of Madison Police Academy, which was over 720 hours long. I received training on various law enforcement matters, including but not limited to, interviewing, constitutional law, criminal violations, criminal behavior, and conducting investigations. I have been a part of numerous missing person, attempted homicide, and homicide investigations. My experience includes investigations relating to drug activity, violent crime, thefts, burglaries, fraud, sex crimes, crimes against children, and welfare checks.

5. I am authorized to investigate violations of the laws of the United States, and I am a law enforcement officer with the authority to execute warrants issued under the authority of the United States. My knowledge of the matters contained in this affidavit is based upon my personal knowledge, information provided to me by other law enforcement officers/agents, and witnesses. Agent interpretation of information from the investigation is set forth in brackets. All dates and times unless noted otherwise are in Pacific Standard Time (PST).

6. This affidavit is made in support of an application by the United States of America for the issuance of a new warrant to search the three laptops currently held in San Diego Regional Computer Forensics Laboratory (SD RCFL) custody and seize evidence from the property of **JACOB DOMINIC ENRIQUEZ (SUBJECT PERSON)** within the Southern District of California, as described more fully in Attachment A (Property to be Searched) incorporated herein, for items described in Attachment B (Items to be Seized) incorporated herein, that constitute evidence, fruits, and instrumentalities of violations of Federal laws, namely 18 U.S.C. § 875. This Court previously issued a search warrant on May 24, 2024 and the three laptops were seized by the FBI on May 24, 2024. As explained below, the FBI was unable to conduct the search within the parameters of the original warrant, and therefore, is seeking a new warrant to complete the search.

7. The facts set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews of victims, my review of documents and computer records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

2

## THE ORIGINAL SEARCH WARRANT EXPIRATION

8. On May 24, 2024, United States Magistrate Judge Lupe Rodriguez, Jr., authorized the search of Jacob Dominic Enriquez's home. On May 24, 2024 the FBI executed the warrant and seized, among other items, three laptops from the residence. On May 31, 2024, FBI S/A Zach Zoccoli delivered the three laptops to the SD RCFL in San Diego, California for forensic search and examination.

9. Due to RCFL backlog and staffing issues, the original warrant expired on July 8, 2024 without being searched. SA Burkholder learned on July 29, 2024 that the three laptops have not yet been searched by SD RCFL.

10. The laptops were seized on May 24, 2024, subsequent to issuance of the original warrant (24-MJ-08465-LR). Although the original 45-day execution deadline in the search warrant has expired, the devices have been in secured custody and are still believed to possess the same evidentiary value. Given the current volume of submissions and staffing at the SDRCFL, I am requesting, as set forth in paragraph 28(b) below, that additional time be granted from the original 45-days to 75-days to complete the execution of the search of the three laptops.

## FACTS IN SUPPORT OF PROBABLE CAUSE

11. On May 23, 2024 at approximately 1:35 P.M., Imperial County (IC) Emergency Medical Services (EMS) and Disaster Preparedness Manager David Creiglow (Creiglow) contacted Federal Bureau of Investigation (FBI) Special Agent (SA) Mitchel Burkholder regarding a potential threat to life of a Drug Enforcement Administration (DEA) Agent and his family. Creiglow reported that at approximately 1:30 P.M. on May 23, 2024, he viewed the Imperial County EMS general mailbox and observed a threatening email was received into the inbox at approximately 11:16 A.M.

12. The threat was the following:

> **David Creiglow**
>
> From: Jacob Enriquez <bactericide88@aol.com>
> Sent: Thursday, May 23, 2024 11:16 AM
> To: Emergency Medical Services
> Subject: I am going to eat your babies SDSU-IV alive
>
> **CAUTION:** This email originated outside our organization; please use caution.
>
> You need to assassinate the DEA agent on the cul de sac on Lenrey on El Centro if you want your chidren to survive.
>
> It does not look well for your weak and sissy political tribe. You are stupid. You are shit inside and outside. You need to start killing the SPIES and their tasty children and make SNUFF films with them.
>
> If you FUCK with myself I am very will known again on the streets I will torture and eat your BABIES and your severed limbs in front of you and then cum on your dying corpses.
>
> FUCK YOU. FUCK YOUR FAMILY. THE POLICE will not save you.
>
> Your babies are dead. Who is responsible the spies are. Go to the SDSU-IV and take them out for some screams.
>
> Stay the fuck away from myself on the streets you cunt bitch or I will cut your asshole open in front of your kids and pray as you die. AMEN.

13. According to AOL subscriber records, the email address of batericide88@aol.com is subscribed to "Jacob Enriquez" with a recovery phone number of "760-562-1342." According to El Central Police Department records, this same phone number is attributed to Jacob Dominic Enriquez. The subscriber records also provided a recovery phone number. Based on a commercial source database search, that phone number is registered to Jacob Dominic Enriquez.

14. The email header from the emailed threat contained IP address 66.163.187.146 for the sender. This IP address is owned by Oath Holdings/Yahoo. Open source look-up of the IP address shows it returning to Omaha, Nebraska. Yahoo had no subscriber records for the IP address, which tends to indicate either the subject sending the IP address used a VPN to mask their true location or that the IP address belongs to Yahoo and is one of their IP addresses that services their network and data centers.

15. On or about April 19, 2024, an email was sent from "batericide88@aol.com" to a person who worked at El Centro Dematology. The email address was from "Jacob Enriquez" with an email address of bactericide88@aol.com. The email said in sum and substance: "Ladies because of your great stupidity you have killed the chief of El Centro Police and his family." The email also stated in sum and substance: "ECPD Robert Sawyer is a deadman." After receiving this message, ECPD made contact with JACOB DOMINIC ENRIQUEZ at his home on West Euclid Ave in El Centro, California, on April 20, 2024. ECPD told him that they were there to ask him about emails that were being sent and if he meant any of the things mentioned in the email. JACOB DOMINIC ENRIQUEZ replied in sum and substance that he didn't mean the things in the email, that he meant no harm and that he loves America.

16. On May 23, 2024, at approximately 2:00 P.M., SA Burkholder spoke with Victim A. Victim A confirmed that Victim A works as a Task Force Office for the Drug Enforcement Administration (DEA). Victim A lives in a cul de sac on Lenrey Avenue in El Centro, California. Victim A has a wife and children. Victim A stated that Victim A did not know JACOB DOMINIC ENRIQUEZ.

17. SA Burkholder sent City of El Centro Police Department (ECPD) Officers to the Imperial County EMS office for the safety of staff. ECPD Officers also responded to Victim A's house and made contact with Victim A. For the safety of the victim, Victim A was relocated until Enriquez was arrested and taken into custody on May 24, 2024.

18. A search of JACOB DOMINIC ENRIQUEZ's criminal history revealed, that while he doesn't have any criminal convictions, he does have a restraining order enforced against him and in favor of another individual. This restraining order is in effect from approximately May 5, 2023 until May 5, 2026. JACOB DOMINIC ENRIQUEZ is ordered to stay away from this person, their work, residence and vehicle.

19. Due to the threat being sent by email, it was sent via internet, with network and company servers being located across the country. Furthermore, and electronic device

5

such as a computer would need to be utilized in order to send the email. The description of the affiliation, street and city name, as well as description of "cul de sac" indicates the target person may have engaged in surveillance and/or other preparatory steps in order to discover these details.

20. In September 2022, FBI Agents made in-person contact with Jacob Enriquez at 1075 West Euclid Ave, El Centro, CA. This address is listed as a secondary address on his CA DMV record. On April 20, 2024, El Centro Police Department Officers had in-person contact with Enriquez at the same address and identified it as his residence. FBI SOS Vanessa Montiel identified the Imperial Irrigation District (IID) utility subscriber of 1075 W Euclid Ave to be Erika Enriquez and that she is the wife of Enriquez.

21. As of approximately 08:20 A.M. on May 24, 2024, vehicles with CA plates 4ZPX537 and 5ZWP742 were both parked outside of 1075 W Euclid Ave. Both of these are registered to Jacob Enriquez and his wife Erika Enriquez.

22. On May 24, 2024, JACOB DOMINIC ENRIQUEZ's father was interviewed by investigators and told investigators that JACOB DOMINIC ENRIQUEZ has a cellphone and is somewhat reclusive and stays in his home.

23. On May 24, 2024, FBI Special Agents (SAs) executed search warrant 24-MJ-08465-LR) on Enriquez's residence, located at 1075 W Euclid Avenue, El Centro, CA 92243. During this search, SAs seized three laptop computer devices that were subsequently labeled as evidence items 1B1 (Black Fusion 5 Laptop – Serial Number 202101347), 1B3 (Silver Macbook – Serial Number C1MPR9LVG940), and 1B4 (Silver Macbook – Serial Number C02SC278GTHX). These laptops were identified by Enriquez's wife, Erika Enqiruez, as belonging to Enriquez.

24. On June 07, 2024, FBI SAs executed a secondary search warrant (24-MJ-8509) in order to collect additional physical documents (calendar and a password book) from Enriquez's house.

6

25. On May 31, 2024, FBI Special Agent Zachary Zoccoli submitted the three laptops (1B1, 1B3, and 1B4) to the San Diego Regional Computer Forensics Laboratory (SD RCFL) in order for the SD RCFL to complete computer imaging and extraction (as authorized in search warrant 24-MJ-08465-LR. They were submitted with Enriquez's cell phone, evidence item number 1B2 (black smartphone in Otterbox – Serial Number R5CX22D1VPB). The SD RCFL was also provided a copy of the search warrant.

26. On June 21, 24, FBI SA Erion Hysi collected 1B2, as processing was complete. The laptops, 1B1, 1B3, and 1B4 were not ready.

27. On July 29, 2024, FBI SA Mitchel Burkholder spoke with SD RCFL Examiner Micah Cox who reported he had not been assigned the laptops (1B1, 1B3, and 1B4) until after the original search warrant expiration, which was approximately July 08, 2024. SA Burkholder advised Cox to maintain custody of the evidence items, but to not proceed with any processing until advised on next steps.

## PROCEDURES FOR ELECTRONICALLY STORED INFORMATION AS TO COMPUTERS AND OTHER ELECTRONIC STORAGE DEVICES

28. With the approval of the Court in signing this warrant, agents executing this search warrant will employ the following procedures regarding computers and other electronic storage devices, including electronic storage media that may contain data subject to seizure pursuant to this warrant:

<u>Seizure and Retention of Instrumentalities</u>

a. Based upon the foregoing, there is probable cause to believe that any computers and other electronic storage devices encountered during this search are instrumentalities of the enumerated offenses because there is probable cause to believe that they may contain contraband and fruits of crime as provided under Rule 41(c)(2), Fed. R. Crim. P., or were used in committing crime as provided under Rule 41(c)(3), Fed. R. Crim. P. Consequently, the computers and any other electronic storage devices are subject to seizure, retention and possible forfeiture and destruction. Computers,

7

other electronic storage devices and media confirmed onsite to contain contraband constitute fruits of crime or to have been used to commit a crime will not be returned but will be imaged offsite and analyzed as provided beginning at subparagraph (c) below. The onsite confirmation may be provided by an owner or user of the computer or storage device or, if feasible, may be obtained by conducting a limited onsite forensic examination to determine if the subject media contains any contraband or otherwise is an instrumentality. Computers and other electronic storage devices and media that are not confirmed onsite as instrumentalities will be taken offsite for imaging and preliminary analysis in accordance with subparagraph (b) below.

      b.    The offsite imaging and preliminary analysis of computers, other electronic storage devices and media to confirm their status as instrumentalities will be conducted within seventy-five (75) days from the date of issuance of this new warrant.. Seized items confirmed to be instrumentalities will not be returned and will be further analyzed as provided below. If the preliminary analysis, by definition an incomplete or partial analysis, does not confirm that a seized item is an instrumentality, the original item will be returned promptly to its owner, absent an extension of time obtained from the owner or from the court. An image of the items will be retained and subjected to a complete forensic analysis, as provided below.

      c.    Computers and other electronic storage devices and media that are retained as instrumentalities will not be returned to its owner. The owner will be provided the name and address of a responsible official to whom the owner may apply in writing for return of specific data not otherwise subject to seizure for which the owner has a specific need. The identified official or other representative of the seizing agency will reply in writing. In the event that the owner's request is granted, arrangements will be made for a copy of the requested data to be obtained by the owner. If the request is denied, the owner will be directed to Fed. R. Crim. P. 41(g).

<u>Identification and Extraction of Relevant Data</u>

d. A forensic image is an exact physical copy of the hard drive or other media. After obtaining a forensic image, the data will be analyzed to identify and extract data subject to seizure pursuant to this warrant. Analysis of the data following the creation of the forensic image can be a highly technical process requiring specific expertise, equipment and software. There are literally thousands of different hardware items and software programs, and different versions of the same program, that may be commercially purchased, installed and custom-configured on a user's computer system. Computers are easily customized by their users. Even apparently identical computers in an office environment may be significantly different with respect to configuration, including permissions and access rights, passwords, data storage and security. It is not unusual for a computer forensic examiner to have to obtain specialized hardware or software, and train with it, in order to view and analyze imaged data.

e. Analyzing the contents of a computer or other electronic storage device, even without significant technical issues, may be very challenging. Searching by keywords, for example, often yields many thousands of hits, each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant hit does not end the review process. The computer may have stored information about the data at issue: who created it; when and how it was created or downloaded or copied; when it was last accessed; when it was last modified; when it was last printed; and, when it was deleted. Sometimes it is possible to recover an entire document that never was saved to the hard drive if the document was printed. Moreover, certain file formats do not lend themselves to keyword searches. Keywords search text. Many common electronic mail, database and spreadsheet applications do not store data as searchable text. The data is saved in a proprietary non-text format. Documents printed by the computer, even if the document never was saved to the hard drive, are recoverable by forensic programs but not discoverable by keyword searches because the printed document is stored by the computer as a graphic image and not as text. Similarly, faxes sent to the computer are

9

stored as graphic images and not as text. In addition, a particular relevant piece of data does not exist in a vacuum. To determine who created, modified, copied, downloaded, transferred, communicated about, deleted or printed the data requires a search of other events that occurred on the computer in the time periods surrounding activity regarding the relevant data. Information about which user had logged in, whether users share passwords, whether the computer was connected to other computers or networks, and whether the user accessed or used other programs or services in the time period surrounding events with the relevant data can help determine who was sitting at the keyboard.

f. It is often difficult or impossible to determine the identity of the person using the computer when incriminating data has been created, modified, accessed, deleted, printed, copied, uploaded or downloaded solely by reviewing the incriminating data. Computers generate substantial information about data and about users which generally is not visible to users. Computer-generated data, including registry information, computer logs, user profiles and passwords, web-browsing history, cookies and application and operating system metadata, often provides evidence of who was using the computer at a relevant time. In addition, evidence such as electronic mail, chat sessions, photographs and videos, calendars and address books stored on the computer may identify the user at a particular, relevant time. The manner in which the user has structured and named files, run or accessed particular applications, and created or accessed other, non-incriminating files or documents, may serve to identify a particular user. For example, if an incriminating document is found on the computer but attribution is an issue, other documents or files created around that same time may provide circumstantial evidence of the identity of the user that created the incriminating document.

g. Analyzing data has become increasingly time-consuming as the volume of data stored on a typical computer system and available storage devices has become mind-boggling. For example, a single megabyte of storage space is roughly

equivalent of 500 double-spaced pages of text. A single gigabyte of storage space, or 1,000 megabytes, is roughly equivalent of 500,000 double-spaced pages of text. Computer hard drives are now being sold for personal computers capable of storing up to 2 terabytes (2,000 gigabytes) of data. And, this data may be stored in a variety of formats or encrypted (several new commercially available operating systems provide for automatic encryption of data upon shutdown of the computer). The sheer volume of data also has extended the time that it takes to analyze data. Running keyword searches takes longer and results in more hits that must be individually examined for relevance. And, once reviewed, relevant data leads to new keywords and new avenues for identifying data subject to seizure pursuant to the warrant.

      h.    Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including the use of hashing tools to identify evidence subject to seizure pursuant to this warrant, and to exclude certain data from analysis, such as a known operating system and application files. The identification and extraction process may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within one-hundred twenty (120) days from the date of seizure pursuant to this warrant, absent further application to this court.

      i.    All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

## PRIOR ATTEMPTS TO OBTAIN THIS DATA

32.    Other than the means described above in this Affidavit, the United States has not attempted to obtain this data by other means.

11

## CONCLUSION

33. Based on the foregoing, there is probable cause to believe that the items identified in Attachments B have been used in the commission of a crime and constitute evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Section 875 – Interstate Communications / Threats to Injure and will be found on the person and/or at the premises to be searched as provided in Attachments A.

_____
Special Agent Mitchel Jaye
Burkholder Federal Bureau of
Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 30th day of August, 2024.

_____ 2:42 p.m.
HONORABLE LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

12

# Attachment A
# Property to be Searched

The property to be searched is as follows:

Laptop Computers belonging to Jacob Enriquez currently in the custody of the SD RCFL and FBI with FBI Evidence Numbers:

a. 1B1 (Black Fusion 5 Laptop – Serial Number 202101347),
b. 1B3 (Silver Macbook – Serial Number C1MPR9LVG940), and
c. 1B4 (Silver Macbook – Serial Number C02SC278GTHX).

# Attachment B
# Items to be Seized

The evidence to be seized from the search of property identified in A is as follows:

a. Laptop Computers;

The seizure and search of computers and computer media will be conducted in accordance with the "Procedures For Electronically Stored Information as to Computers and Other Electronic Storage Devices," provided in the affidavit submitted in support of this warrant.

The following data will be seized only to the extent that it contains evidence of violations of 18 U.S.C. § 875, including evidence reflecting use, dominion and control of the device such as communications, records, or data including but not limited to emails, photographs, audio files, videos, or location data:

1) Tending to indicate efforts to send threatening emails;

2) Tending to identify other facilities, storage devices, or services-such as email addresses, IP addresses, phone numbers- that may contain evidence of efforts to send threatening emails;

3) Tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data described above;

4) Tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above;

which are evidence, fruits or instrumentalities of violations of 18 U.S.C. § 875 (c) - Interstate Communication - Threats to Injure.